UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

    -against-

DION NELSON,

        Defendant.

MEMORANDUM & ORDER
10-CR-820 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Dion Nelson moves for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. (Mot. to Reduce (Dkt. 265).) For the foregoing reasons, Nelson's request is GRANTED, and his sentenced is reduced to time served.

## I. BACKGROUND

On September 23, 2010, Nelson was arrested on a complaint for possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). (Compl. (Dkt. 1).) He was denied bail in connection with this charge and ordered detained on September 29, 2010. (First Order of Detention (Dkt. 5).) The following month, Nelson was indicted, and bail was again denied. (Indictment (Dkt. 7); Second Order of Detention (Dkt. 11).) A superseding indictment was returned on December 7, 2010, charging Nelson with six counts, including conspiracy to distribute cocaine and cocaine base, unlawful use of firearm, distribution of marijuana, operation of a stash house, and being felon in possession. (Superseding Indictment (Dkt. 15).)

On April 30, 2012, Nelson pled guilty to Count Two of the superseding indictment, unlawful use of a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Judgment (Dkt. 148).) The parties stipulated that Nelson discharged a firearm in relation to the crime charged in Count One and that "he is accountable for the

1

distribution of at least 5 kilograms of marijuana and a quantity of cocaine." (Plea Agreement (Dkt. 215-1) ¶ 2.) The agreement listed possible penalties, including a minimum term of imprisonment of ten years, a maximum term of life imprisonment, and a maximum period of five years supervised release following any term of imprisonment. (*Id.* ¶ 1.) Nelson waived his right to file an appeal or challenge his conviction or sentence if the court were to impose a term of imprisonment of 216 months or below. (*See id.* ¶ 4.)

Ultimately, the Government recommended a sentence of 264 months, which was above the 120-month statutory minimum and the waiver of appealability cutoff. (*See* Sentencing Tr. (Dkt. 237) at 52:20-24.) The court sentenced Nelson to a 300 month (25 year) term of imprisonment to be followed by five years of supervised release. The court cited the "breathtaking" stash of loaded weapons and combat gear that Nelson possessed and determined that it could not "overlook a lifetime of violence, guns, drugs." (*See id.* at 64:12-65:9.)

Nelson appealed his sentence, arguing that the statutory language required a sentence of exactly ten years and that the sentence was both procedurally and substantively unreasonable. *See United States v. Nelson*, 591 F. App'x 37, 37 (2d Cir. 2015) (summary order). The Second Circuit denied the appeal. *See id.* On the first issue, the court reasoned that the statute authorizes "a term of imprisonment of not less than 10 years," so a 300-month sentence did not conflict with this language. *Id.* at 37. Next, the court found no abuse of discretion in imposing the sentence, holding that it was substantively reasonable, but remanded to this court to restate its reasons for imposing an above-guidelines sentence. *See id.* at 38-39. Nelson appealed to the Supreme Court, but the Supreme Court denied certiorari on October 25, 2015. *See Nelson v. United States*, 577 U.S. 898 (2015).

On April 15, 2021, Nelson moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. (*See* Mot. to Reduce.)[1] At that point, Nelson had served eleven and a half years, equivalent to 16 years inclusive of expected good time credit. He argued that there were extraordinary and compelling reasons for a sentence reduction, including the COVID-19 pandemic and evidence of his rehabilitation and positive contribution to society. (*See id.*) The Government opposed this request on May 24, 2022. (*See* Opp'n to Mot. to Reduce (Dkt. 268).)

## II. DISCUSSION

Nelson moves for compassionate release or a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). He argues that the COVID-19 pandemic, his rehabilitation and Bureau of Prisons ("BOP") record, his contribution to the community, and his change in family circumstances all weigh in favor of a reduction. (*See generally* Mot. to Reduce.) The Government contends that § 3553(a) factors weigh against sentence reduction and that Defendant has not demonstrated extraordinary or compelling reasons for relief. (*See* Opp'n. to Mot. to Reduce.)

---

[1] The court notes that Nelson, proceeding *pro se*, also filed a motion to vacate his sentence under 18 U.S.C. § 2255 on September 20, 2016. (*See* Mot. to Vacate (Dkt. 192).) The Government opposed this motion on May 17, 2017. (*See* Opp'n to Mot. to Vacate (Dkt. 215).) Subsequently, on April 17, 2019, Nelson moved to amend his petition in light of *United States v. Wilson*, 920 F.3d 155 (2d Cir. 2019), which the court granted. (*See* Petition to Amend (Dkt. 231); May 23, 2019 Order (Dkt. 232).) The Government responded to the amendment on July 15, 2019. (*See* Opp'n to First Amendment (Dkt. 239).) On the same day, another letter requesting an amendment was filed on the docket. (*See* Second Mot. to Amend (Dkt. 238).) Once the Government has responded to the arguments in Nelson's July 2019 letter, the court will consider this motion to vacate fully briefed and will decide the motion, assuming that Nelson wishes to continue pursuing his claims under 18 U.S.C. § 2255.

To evaluate a motion to reduce a sentence, the court must consider (1) "the factors set forth in section 3553(a) to the extent that they are applicable;" (2) "extraordinary and compelling reasons warrant[ing] such a reduction;" and (3) whether "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The court may consider a motion raised by a defendant after the exhaustion of "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Nelson made requests for compassionate release to the warden at FCI Fairton on December 29, 2020, and on March 10, 2021. (*See* Inmate Requests (Dkt. 265) at ECF pp. 25-26.) He again requested compassionate release on April 1, 2021, which the administrative remedy coordinator acknowledged as received on April 6, 2021. (*Id.* at 27-28.) Nelson filed this motion on April 14, 2021. (*See* Mot. to Reduce.) Although this motion was brought within thirty days of the April 1, 2021 request to the BOP, there is no evidence in the record that the BOP has responded to any of Defendant's applications. In any event, the Government "does not contest that the defendant has exhausted his administrative remedies." (Opp'n to Mot. to Reduce at 6.) Therefore, the court finds that his administrative remedies have been exhausted, and the court will evaluate the merits of Nelson's motion.

### B. Extraordinary and Compelling Reasons and the Applicable Policy Statements

Rather than defining extraordinary and compelling reasons for a sentence reduction in 18 U.S.C. § 3582(c)(1)(A), Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling," specifying only that

4

rehabilitation "alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The text of the applicable Commission policy statement adds that a defendant must not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

The policy statement commentary further provides that there may be extraordinary and compelling reasons when (1) the defendant suffers from a medical condition, such as terminal illness or a serious physical, functional, or cognitive impairment; (2) the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) the defendant faces extraordinary family circumstances, including "the death or incapacitation of the caregiver of the defendant's minor child." *Id.* at cmt. 1(A)-(C). In addition, the Commission issued a broad-sweeping fourth reason: "[A]s determined by the Director of the Bureau of Prisons," additional circumstances may produce "extraordinary and compelling reason other than, or in combination with the reasons described in subdivisions (A) through (C)." *Id.* at cmt. 1(D). The Second Circuit has held that the First Step Act permits "district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). The "only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Id.* at 237-38.

In this case, the Government argues that Nelson's rehabilitation and activities while incarcerated do not rise to the level of extraordinary and compelling, nor do any issues related to the COVID-19 pandemic. (*See* Opp'n to Mot. to Reduce at 7-10.) The court disagrees. It finds that the factors Defendant has identified,

5

when considered together, constitute extraordinary and compelling reasons consistent with the applicable policy statement.

1. Rehabilitation and Contributions to the Community

Although rehabilitation alone is not sufficient to create extraordinary and compelling circumstances, it is nonetheless an important aspect of the analysis. *See Brooker*, 976 F.3d at 237-38; *see also United States v. Torres*, 464 F. Supp. 3d 651, 661 (S.D.N.Y 2020) ("[R]ehabilitation is *relevant* to the question of whether a sentence should be reduced and that rehabilitation, when considered together with other equitable factors, could constitute extraordinary and compelling reasons.").

In *Torres*, the court found that in addition to rehabilitation and pandemic-related concerns, a significant factor in favor of reducing the defendants' sentences was the contributions they had already made to their communities and their "commitment to public service if they are released." 464 F. Supp. 3d at 662. Both defendants were serving life in prison, of which they had served over thirty years, in connection with a heroin conspiracy. *Id.* at 652-53. As evidence of their contribution to their communities, the court looked to the defendants' "unofficial" mentorship of their fellow inmates, their official services to an at-risk youth program resulting in outreach to thousands of individuals, and their religious engagement. *See id.* at 662-63. The court reasoned that "these acts do not amount to further arguments based on rehabilitation," but instead "exceed the bounds of what we consider 'rehabilitation.'" *Id.* at 663. Similarly, in *United States v. Rodriguez*, the court held that evidence of rehabilitation was "nothing short of remarkable" when the defendant, in his twenty years incarcerated, had built "an outstanding employment record," completed his GED and 4,000 hours of training, contributed to prison programming, and made efforts to help fellow inmates. 492 F. Supp. 3d 306, 311-13 (S.D.N.Y. 2020). There, the court

found that "this overwhelming evidence of, not just rehabilitation, but transformation, weighs in favor of a finding that extraordinary and compelling reasons exist to modify" the sentence. *Id.* at 313.

Nelson has taken accountability for his past actions. He demonstrates an understanding of the gravity of his criminal behavior and has fully renounced his gang affiliation, resulting in his transfer to a "non-active gang facility," where he currently is incarcerated, for his own safety. (*See* Mot. to Reduce at 7; Reply (Dkt. 269) at 5.) Ten letters from supervisors, fellow inmates, and family and friends have been submitted in support of this application.

Nelson obtained his GED and completed more than 5,000 hours of training, including more than ten educational programs. (*See* Mot. to Reduce at 2; Certificates of Completion (Dkt. 265) at ECF pp. 11-19.) He has worked for the Federal Prison Industries, better known as UNICOR, since 2018. (Mot. to Reduce at 2.) His work has included controlling the factory's loading dock, working as a Quality Assurance Clerk, volunteering to make face shield masks during the pandemic, and training other inmates. (*See* Supplement to Mot. to Reduce (Dkt. 266).) As of April 14, 2021, he was one of seven inmates with computer access in his facility. (*See* Mot. to Reduce at 2.) In a progress report, his supervisor states:

> Inmate Nelson has gained the respect of his co-workers [due] to his knowledge and skill as the Final Quality Inspector. . . . He brings a positive attitude and desire to learn within the work environment. He is respectful to authority. . . . He is easy to work with and can be depended upon to complete tasks on time . . . Nelson has helped Unicor through his ability to train and lead other employees in their job duties. Although not a requirement, he has done this solely on his own initiative. While supervising inmate Nelson, I've

found him to be a hard working individual with an excellent attitude. I would be very comfortable hiring this individual in the future and feel he will be a productive member of society.

(Ltr. from O. Marti (Dkt. 265) at ECF p. 20.) Letters from fellow inmates describe Nelson as a "diligent Man of God" who patiently teaches others and strives to build a foundation of skills that will set him up for success upon his release. (Ltr. from J. Hogeland (Dkt. 265) at ECF p. 29.) Mr. Hogeland writes that Nelson's "skills with Data entry and Excel, and in teaching me went above and beyond. . . . The things he has patiently taught me will be an absolute blessing with reentry in society." (*Id.*) Similarly, another inmate writes that Nelson has "chosen to help strengthen the skill set of those who desire[] to learn. Mr. Nelson has always taken the initiative to improve upon himself, others and his surroundings as well as attacking every opportunity to further fill his own rolodex of skills." (Ltr. from D. Peyton Sr. (Dkt. 265) at ECF p. 30.)

The BOP has developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") to assess an inmate's rehabilitation while incarcerated and evaluate risks upon their release.[2] Nelson falls in the low-risk level category, with a general score of 27 and violence score of 21. (PATTERN Assessment (Dkt. 265) at ECF p. 35.) A report by the Attorney General finds that inmates who score in the low category have a 98.2% chance of not recidivating.[3] Although Nelson's scores skew on the higher end of the low-risk range, the bulk of these data points come from

---

[2] *See generally* Federal Bureau of Prisons, *PATTERN Risk Assessment*, https://www.bop.gov/inmates/fsa/pattern.jsp (last visited May 4, 2022).

[3] U.S. Dep't of Justice Off. of the Attorney Gen., *The Attorney General's First Step Act Section 3634 Annual Report* (Dec. 2020), https://www.bop.gov/inmates/fsa/docs/20201221_fsa_section_3634_report.pdf.

8

his criminal history prior to incarceration, not from his term of imprisonment. (*See id.*) Although Nelson was subject to two "serious incident" reports reflected in the assessment, he explains—and the court credits—that he became a target of other inmates because he officially renounced his gang affiliation. (*See* Reply at 5.) Corroborating this explanation is the fact that Nelson was later transferred to a non-active gang facility, where no other incidents have taken place. (*Id.*)

Today, Nelson shows a commitment to making positive contributions to society. For more than five years, Nelson has worked with the True 2 Life organization, an anti-gun violence initiative that works to steer at-risk individuals in the right direction. (Ltr. from Central Family Life Ctr. (Dkt. 265) at ECF pp. 21-22.) He provided information about gang life that has helped True 2 Life "mediate many conflicts with the communities of the North Shore of Staten Island." (*Id.*) The organization is prepared to continue its relationship with Nelson after his release by offering him a fulltime position as a Violence Interrupter. (*See id.*) Together, these facts portray a person who is not only rehabilitated, but who has made extraordinary efforts to be a positive contributor to society.

The Government responds that because he has not helped thousands of at-risk individuals like the *Torres* defendants, Nelson's actions cannot rise to the level of "extraordinary and compelling." (Opp'n to Mot. to Reduce at 9.) The court disagrees: The fact that Nelson does not yet have a thirty-year prison record to reflect his rehabilitation should not be disqualifying.

    2.  Family Circumstances

As previously noted, the "death or incapacitation of the caregiver of the defendant's minor child" can on its own be an extraordinary and compelling reason for a sentence reduction. In 2016, Nelson's wife died, leaving his now fourteen-year-old daughter in the custody of a relative. (*See* Ltr. from D. Wheatley (Dkt. 265)

9

at ECF p. 23; Ltr. from T. Nelson (Dkt. 265) at ECF p. 32.) Nelson's daughter has been having emotional and mental difficulties, no doubt in part due to the absence of both of her parents. (*See* Ltr. from D. Wheatley.) Should he be released, Nelson plans to reunite with his daughter in Pennsylvania in the home of his fiancé, who has already built a close relationship with Nelson's daughter. (*See* Ltr. from C. Young (Dkt. 265) at ECF p. 24.) This change in family circumstances is an extraordinary and compelling factor counselling in favor of reuniting Nelson with his daughter.

### 3. COVID-19 Concerns

Finally, Nelson asserts that he is at risk of developing complications were he to contract COVID-19 because of his weight, age, and smoking history, which should strongly favor compassionate release. (*See* Mot. to Reduce at 3-5.) The Government disagrees. (Opp'n to Mot. to Reduce at 7.) Although the court generally agrees with the Government that Nelson has not demonstrated that he is a high-risk individual, the court still considers the pandemic prison conditions as a factor in its analysis. *See United States v. Lora*, 16-CR-44 (KPF), 2022 WL 1055749, at *5-6 (S.D.N.Y. Apr. 8, 2022) ("[P]andemic-induced conditions of confinement *may* constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic."); *United States v. Hatcher*, 18-CR-454 (KPF), 2021 WL 1535310, at *3-4 (S.D.N.Y. 2021) (holding that while "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently extraordinary and compelling," the conditions can be considered as part of the totality of the circumstances). "A day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.

While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing." *United States v. Mcrae*, 17-CR-643 (PAE), 2021 WL 14227, at *5 (S.D.N.Y. Jan. 15, 2021); *see also Rodriguez*, 492 F. Supp. 3d at 311 (finding that incarceration during that pandemic "means that the actual severity of [a] sentence . . . exceeds what the Court anticipated at the time of sentencing").

For at least fourteen months, visitations, including those with family members, were prohibited, and educational programs stalled. (Reply at 9.) Although the record does not describe every detail of FCI Fairton's pandemic procedures, the BOP's policy has generally been to sharply limit time outside an inmate's unit for any purpose, even using phones or accessing the library.[4] Accordingly, the harsh prison conditions Nelson suffered during the pandemic are relevant to the determination of whether extraordinary and compelling circumstances exist.

### C. Section 3553(a) Factors in Favor of Reduction

Having found extraordinary and compelling circumstances consistent with the applicable policy statement, the court turns to the § 3553(a) factors. At sentencing, this court stated, "I appreciate the defendant's statement that I accept, in which I accept his sincerity of the moment, but I cannot overlook a lifetime of violence, guns, drugs." (Sentencing Tr. at 65:4-6.) Ultimately, in consideration of the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes, the court imposed a 25-year term of imprisonment followed by five years of supervised release. (*See id.* at 65:10-66:5.) Today, however, these same factors lead to a different conclusion.

---

[4] Federal Bureau of Prisons, *COVID-19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Apr. 19, 2022).

"[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed courts to consider at sentencing." *Pepper v. United States*, 562 U.S. 476, 491 (2011).

Nelson's 25-year sentence is well above the statutory minimum of ten years. Discharging a firearm in connection to drug trafficking under § 924(c) is a serious offense. At the time of sentencing, an upward departure from the Guidelines was necessary to promote a sentence in accordance with the § 3553(a) factors. Having now served approximately half of his term of imprisonment, however, Nelson is no longer a threat to the community. His time spent incarcerated has both punished Nelson and deterred him from future unlawful conduct. Nelson writes, "at the time of sentencing I didn't understand why I was giv[en] such a severe sentence. I didn't have the foresight to see that you were saving my life as well as protecting the public from a misguided individual," and that with a chance to re-join the community, he will continue to volunteer as a "way I could pay back some of my debit [sic] to society." (Apr. 13, 2022 Ltr. (Dkt. 276).) As Nelson stands today, the sentence he has already served, which exceeds the statutory minimum, adequately promotes respect for the law.

### D. Whether a Sentence Reduction is Warranted

After evaluating the § 3553(a) factors and finding that extraordinary and compelling circumstances exist, the court must determine whether a sentence reduction is appropriate. A sentence reduction "must be reasonably responsive to the extraordinary and compelling reasons that warrant it." *Rodriguez*, 492 F. Supp. 3d at 314. Nelson has been offered two positions in the New York area, one with True 2 Life and another at his friend's store in his old community. (*See* Ltr. from D. Wheatley; Ltr. from Central Family Life Ctr.) Nelson expects, however, to live in Pennsylvania with his fiancé, a business owner. It is important, in the court's view, that Nelson does not

plan to return to the neighborhood where he became part of a Bloods gang. (*See* Reply at 5; Ltr. from C. Young.)

Balancing the severity of Nelson's crime and criminal history with his extraordinary and compelling rehabilitation, contribution to society, need to care for his minor child, and the conditions of incarceration during the COVID-19 pandemic leads this court to find that a reduction of the term of imprisonment is appropriate. Given that, as of April 2021, Nelson had already served sixteen years inclusive of good time credit—at least fourteen months of which were during pandemic conditions—the court reduces Nelson's term of imprisonment to time served followed by a period of supervised release for five years.

## III. CONCLUSION

For the reasons stated above, Nelson's [265] motion to reduce is GRANTED, and his sentence to is reduced to time served, followed by a period of supervised release for five years, during which all previously imposed conditions will apply.

The court construes Nelson's [238] letter dated July 8, 2019, as a motion to amend his [192] Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255. Nelson is DIRECTED to notify the court within 14 days as to whether he wishes to continue pursuing his claims asserted under 18 U.S.C. § 2255. If Nelson chooses to continue pursuing these claims, the Government is DIRECTED to respond to the arguments raised in his July 2019 letter within 21 days of receiving Nelson's response. Nelson may file a reply, if he so chooses, with the Clerk of Court within 21 days of the date of his receipt of a copy of the Government's response.

The Clerk of Court is respectfully DIRECTED to send a copy of this order by certified mail, return receipt requested, to *pro se* Nelson at his address of record.

SO ORDERED.

Dated: Brooklyn, New York
May 10, 2022

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge